UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Shaun M. Cook

    v.                                            Civil No. 11-cv-198-JD

Ron White, Superintendent,
Merrimack County Department of
Corrections, et al.[1]

**REPORT AND RECOMMENDATION**

Shaun M. Cook has filed this action, pursuant to 42 U.S.C. § 1983, alleging that defendants, individuals employed at the Merrimack County Department of Corrections ("MCDC"), violated his Fourteenth Amendment right to protection from harm during his incarceration at that facility. Because Cook is a prisoner, the matter is before the court for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

**Standard of Review**

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se, the magistrate judge

---

[1] In addition to Ron White, Cook has named Merrimack County Department of Corrections employees William Griffin, Nancy Gallagher, and Robert Hage, as defendants to this action.

conducts a preliminary review. The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)). In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6). The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,

12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

    Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

## Background

On December 31, 2008, and January 1, 2009, Cook was incarcerated as a pretrial detainee at the MCDC.  During those two days, Cook asserts that he was placed on suicide watch as he had been deemed by MCDC mental health personnel to be unstable and at risk to hurt himself or someone else.  While on suicide watch, Cook states that he was placed in a cell with another inmate, Roz Abraham, who was also on suicide watch.  Abraham had also been deemed unstable and dangerous to himself or others.  Cook alleges that being forced to share a cell while on suicide watch heightened his anxiety and depression.

Cook claims that it violates MCDC policy to place two inmates on suicide watch in a cell together.  Cook asked to be moved into a cell alone.  Cook alleges that, at least initially, MCDC staff members failed to respond to those requests.  Cook

4

states that he was eventually moved to a single cell, after experiencing hours of mental distress.

Cook states that MCDC Correctional Officer William Griffin was aware that on January 1, 2009, Cook was housed in a cell with another suicidal inmate. Cook states that Griffin is aware that inmates on suicide watch pose a danger to themselves or others and are not supposed to be housed together. Cook asked Griffin to contact a shift supervisor to try to have him moved to a single cell as Abraham was causing Cook to experience unnecessary anxiety and depression. Griffin disregarded Cook's request. Griffin eventually moved Cook, but not before Cook experienced hours of heightened mental distress.

Cook alleges that MCDC mental health worker Nancy Gallagher is aware that inmates on suicide watch should be alone in a cell because of the risk suicidal inmates pose to themselves or others. Cook claims that Gallagher bears responsibility for directing the MCDC staff in following MCDC's mental health policies and for ensuring the safety and security of inmates.

Cook alleges that the MCDC Chief of Security, Capt. Robert Hage, is responsible for the safety of all inmates at the MCDC. Cook states that Hage has failed to correctly instruct his staff on the appropriate treatment and handling of inmates on suicide watch. Cook also claims that MCDC Superintendent Ron White is

the individual responsible for insuring the safety and security of inmates at the MCDC and insuring that MCDC staff comport with administrative policies as well as the law.

### Claims

Cook has raised the following claims for relief:[2]

1. Defendants have violated Cook's Eighth and Fourteenth Amendment rights to safety and security during his incarceration by improperly housing Cook, while he was on suicide watch, in a cell with an inmate who was also on suicide watch.

2. Defendants violated Cook's Fourteenth Amendment due process rights by failing to follow administrative procedures for handling inmates on suicide watch.

3. Defendants have violated Cook's First Amendment right to free speech.

### Discussion

I. <u>42 U.S.C. § 1983</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983; <u>City of Okla. City v.</u>

---

[2] The claims, as identified here, will be considered to be the claims raised in the complaint for all purposes. If Cook disagrees with the claims as identified, he must do so by properly filing either an objection to this report and recommendation or a motion to amend the complaint.

Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law
> . . ..

In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Here, Cook claims that the defendants, who are state actors, violated his federal constitutional rights.  As such, his claims arise under § 1983.

II. Safety and Security

    A.   Standard for Failure to Protect Claim

Cook alleges that his Eighth Amendment right to be free of cruel and unusual punishment was violated when MCDC officials placed him in a cell with another inmate on suicide watch, and disregarded his request to be moved to a single cell.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994).  Prison officials'

duty to protect an inmate from such a risk extends to a constitutional duty "not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners." Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002)). "'Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases.'" Mosher, 589 F.3d at 493 n.3 (quoting Burrell, 307 F.3d at 7); Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007) ("The Fourteenth Amendment provides at least as much protection for pretrial detainees as the Eighth Amendment provides for convicted inmates."). Cook was a pretrial detainee at the time the allegations underlying his claims arose. His claim that defendants failed to take adequate steps to protect him from harm by another inmate, therefore, arises under the Fourteenth Amendment and the court will construe the complaint to have so alleged.

As stated above, a prison official must act with "deliberate indifference" to a substantial risk of serious harm to an inmate in order to violate the inmate's constitutional rights. See Farmer, 511 U.S. at 828. Deliberate indifference means that a "prison official subjectively 'must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference.'" Mosher, 589 F.3d at 494 (quoting Farmer, 511 U.S. at 835).

    B.    Risk of Serious Harm

Cook states that an inmate on suicide watch at the MCDC is supposed to be placed alone in a cell for "24/7" observation to ensure that he will not harm himself. Cook asserts that inmates are supposed to be housed alone on suicide watch because they have been deemed to be unstable and to pose a possible danger to others.

There are no facts alleged in the complaint which provide any basis to believe that Cook was, at any time, at any risk of physical harm while celled with Abraham. Cook does not allege that Abraham physically harmed or threatened him with physical harm. Cook describes no reason beyond a generic finding that suicidal inmates pose risks to themselves and others, to believe that he was actually in harm's way at any time while on suicide watch. Accordingly, Cook has failed to allege a "risk of serious harm," as is required to state a § 1983 claim for any failure to protect him by the defendants.

Cook states he suffered from several hours of heightened anxiety and depression before being moved to a single cell.

That sort of discomfort is not the sort of "serious harm" from which the constitution offers protection.

    C.   <u>Deliberate Indifference</u>

Even if Cook had established a risk of serious harm arising out of his placement in a cell with Abraham, he has failed to allege that any defendant was aware of and deliberately indifferent to that harm. Cook states that when he and Abraham were deemed to be risks to themselves or others, MCDC officials responded by placing both inmates on suicide watch, placing them in a particular cell, in safety smocks, so that they could be observed. By observing inmates on suicide watch, even when those inmates are housed together, MCDC officials presumably minimized the risk that the inmates would harm one another. Cook does not allege that MCDC staff failed to engage in appropriate observation of his cell while he was on suicide watch. There are no allegations in the complaint that allow the court to find that MCDC officials failed to reasonably respond to any potential threat that may have accrued from placing two suicidal inmates together in a cell. Accordingly, the complaint fails to state a plausible claim that any defendant acted with deliberate indifference to any risk of harm to Cook that may have existed. Because Cook has failed to state that he was at any risk of serious harm, or that any defendant was indifferent

to such harm, the claim, and the defendants named in the complaint, should be dismissed from this action.

III. <u>Failure to Follow Administrative Procedures</u>

Cook alleges that his due process rights were violated when the defendants failed to follow MCDC policy and procedures for the proper handling of inmates on suicide watch. Specifically, Cook alleges that MCDC policies instruct that inmates on suicide watch should be placed in a cell, alone, for constant observation. Construing the allegations in the complaint generously, the court finds that Cook has attempted to assert a claim that MCDC policies and procedures created a liberty interest in being placed in a single cell for suicide watch, and that Cook was deprived of that liberty interest without due process.

In <u>Sandin v. Conner</u>, the Supreme Court held that where, as here, an alleged due process violation is based on a failure to follow a state regulation ostensibly creating a liberty interest, the court should look to the deprivation to determine whether it was "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. 472, 486 (1995). Cook alleges that as a result of the MCDC officials' failure to follow MCDC policy, he was housed for several hours with another inmate while on suicide watch, which

caused him to experience some mental distress.  Being made to temporarily share a cell, even while on suicide watch, is not "restraint . . . [that] imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that would garner the protection of the Due Process Clause.  See id. at 483.  Accordingly, Cook's Fourteenth Amendment due process claim, alleging that the defendants failed to follow MCDC procedures, should be dismissed.

IV.   First Amendment/Freedom of Speech

Cook generally asserts that his First Amendment right to free speech was violated.  Cook states no facts supporting this general assertion; he states neither that he was prevented from speaking nor that he was punished for doing so.  Accordingly, this claim should be dismissed as insufficiently alleged.

**Conclusion**

For the foregoing reasons, the court recommends that this action be dismissed in its entirety.  Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order.  See Sch. Union No.

37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date: October 28, 2011

cc: Shaun M. Cook, pro se

LBM:jba